# United States Court of Appeals
## For the First Circuit

No. 16-2250

ROBERT JUDE WILBER,

Plaintiff, Appellant,

v.

ROBERT CURTIS; BRIAN KINSELLA; MICHAEL ROGERS,

Defendants, Appellees,

MICHAEL SIMONEAU,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Jennifer C. Boal, Magistrate Judge]

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

Richard K. Latimer for appellant.
Thomas R. Donahue, with whom Leonard H. Kesten, Deidre Brennan Regan, and Brody, Hardoon, Perkins and Kesten, LLP were on brief, for appellees.

September 20, 2017

**BARRON**, **Circuit Judge**. This appeal concerns a challenge to a summary judgment ruling that dismissed a lawsuit that a Massachusetts property owner brought against three police officers. The suit addressed the owner's arrest for actions that he took in connection with his objection to the clearing of vegetation on his property by the work crew for an electrical utility, which held an easement to the property. We affirm the grant of summary judgment in part and vacate in part.

**I.**

We first recount the following undisputed facts. We take them from the unchallenged findings that are set forth in the Order on the Parties' Motions for Summary Judgment issued by the Magistrate Judge assigned to the case.

The plaintiff is Robert Wilber. He resides and owns property in Falmouth, Massachusetts. NStar Corporation ("NStar"), which is an electrical company, possesses a deeded easement over a part of Wilber's property. The deed grants NStar an "easement to erect, operate, maintain and remove a line . . . for the transmission of electricity. . . . [t]ogether with the right to trim, cut and remove such trees and underbrush as in the judgment of [NStar] may interfere with or endanger said line and equipment and to enter upon said land for any of the aforesaid purposes." (last modification added).

NStar employs Vegetation Control Services ("VCS") "to clear vegetation on its easements in order to provide for the maintenance of power lines and structures." The District Court recognized that Wilber describes himself as "a vocal opponent of NStar's program of spraying herbicides on its utility easements," and that he is of the view that "NStar's program of clear-cutting" on those easements "was overly aggressive."

In early November, 2011, Wilber saw two VCS employees at a worksite near his property. Wilber approached the VCS employees and "hassled" them. As a result of this confrontation, VCS requested a police presence at future worksites on Wilber's property.

On November 21, 2011, a week after that earlier encounter between Wilber and VCS employees, VCS crew members came onto the easement on Wilber's property in order to begin their work in clearing vegetation from the site. As a result of VCS's request for a police presence, the crew members were accompanied by two Barnstable Police Officers, Officer Robert Curtis and Officer Brian Kinsella, each of whom is a defendant in this case.

Two VCS employees "measured the clearing distance from the center of the power lines toward the abutting properties and marked the clearing area with red tape tied off to tree limbs." Upon seeing the crew at work, Wilber went into "a high state of agitation." And, after observing "chainsaws and heavy-duty

machinery in action within the clearing area; Wilber vocally protested and strung yellow caution tape and plastic rope across the easement."

A VCS employee observed Wilber's actions and informed the two officers. "Curtis observed the tape 'zig-zagged' across the easement and saw Wilber, who was standing in the easement, taking pictures." The officers, together with two VCS crewmembers, attempted to remove the yellow caution tape, which "caused an interruption to the work of the VCS crew." Kinsella then told Wilber that Wilber would be arrested if he "interfered with the removal of the vegetation within the easement."

Wilber responded that VCS's clear-cutting work on his property must stop. Kinsella, in turn, "informed Wilber that the work would not stop absent a court order" and instructed Wilber "to stand outside the marked area easement area while the crew was working." Wilber, however, "disregard[ed]" these instructions. "[W]hen [Wilber] reentered the worksite, a large machine was in use eighty to one hundred feet away, a chainsaw was in use fifty feet away, and another chainsaw was being sharpened twelve to fifteen feet away."

Kinsella again asked Wilber "to stay outside the red tape markers" set out by VCS. Wilber refused and sat down on a freshly cut tree stump. While Wilber was sitting on the stump, the VCS crew stopped working. Wilber shouted to the workers that

- 4 -

they "didn't have to do this." Curtis and Kinsella then approached Wilber, and Curtis asked Wilber once more to leave the work area. The officers warned Wilber to leave the worksite at least three more times and notified Wilber that noncompliance could result in his arrest. Rather than complying, "Wilber [then] stood up, placed his hands behind his back, and did not resist arrest."

The officers first took Wilber to the police station for booking, where he was booked by Curtis and a third Barnstable Police Officer, Michael Rogers, who is the other defendant in this case. Wilber was then brought to Falmouth District Court, where he was held pending arraignment. That same day, the Commonwealth filed in that court a criminal complaint for one count of disorderly conduct against Wilber. The Commonwealth dismissed the complaint on October 15, 2012.

This lawsuit followed. On November 20, 2014, Wilber filed suit in Barnstable County Superior Court against Curtis, Kinsella, and Rogers. Wilber's complaint contained one claim arising under federal law: an allegation that the officers violated Wilber's civil rights under 42 U.S.C. § 1983. The complaint also contained five claims under Massachusetts law: violation of civil rights under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11H, the state analogue to § 1983; malicious prosecution; intentional infliction of emotional distress; false arrest; and false imprisonment.

- 5 -

On January 22, 2015, the defendants removed the case to the United States District Court for the District of Massachusetts. On February 3 and 4, 2016, the parties filed cross-motions for summary judgment, with the defendants moving for summary judgment as to all claims and Wilber moving for summary judgment as to four of the claims. The District Court initially assigned a magistrate judge to the case to consider the cross-motions. On the consent of both parties, the case proceeded before the Magistrate Judge for all purposes. See LimoLiner, Inc. v. Dattco, Inc., 809 F.3d 33, 35 n.1 (1st Cir. 2015). The Magistrate Judge granted the defendants' summary judgment motion as to all of the claims.

The Magistrate Judge first considered Wilber's § 1983 claim. With respect to that claim, the Magistrate Judge -- relying on Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) -- noted that a plaintiff must show "two essential elements." Id. First, "the challenged conduct must be attributable to a person acting under color of state law." Second, "the conduct must have worked a denial of rights secured by the Constitution or by federal law." Id.

The Magistrate Judge found that the defendants did not contest that they were acting under color of state law. The Magistrate Judge then turned to the question whether the officers had violated Wilber's constitutional rights -- and specifically

whether his Fourth Amendment right against unreasonable seizure had been violated by his arrest.

The defendants contended that Wilber's Fourth Amendment right had not been violated because they had probable cause to arrest Wilber for having committed any of four separate state law offenses -- disorderly conduct, Mass. Gen. Laws ch. 272 § 53 (2015); disturbing the peace, id.; trespass, Mass. Gen. Laws ch. 266 § 120 (2001); and interfering with a police officer in the performance of his duties, see Commonwealth v. Shave, 965 N.E.2d 227 (Mass. App. Ct. 2012) (affirming the validity of this common law crime); Mass. Gen. Laws ch. 279 § 5 (2017) (providing for the existence of common law crimes). They further contended that they were entitled to summary judgment because the record showed that no reasonable jury could find that the officers lacked probable cause to conclude that Wilber had committed at least one of these offenses.

In considering the defendants' summary judgment motion on the § 1983 claim, the Magistrate Judge addressed only whether there was probable cause to arrest Wilber for disturbing the peace, Mass. Gen. Laws ch. 272, § 53, and for disorderly conduct, id. The Magistrate Judge determined that, although genuine issues of material fact existed as to whether probable cause existed with regard to whether the officers lacked probable cause to arrest Wilber for disorderly conduct, Wilber's § 1983 claim failed because

no reasonable jury could find that the officers lacked probable cause to arrest Wilber for disturbing the peace.

The Magistrate Judge then turned to Wilber's claim under Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11H, which is Massachusetts' analogue to § 1983. The Magistrate Judge explained that because it had "found for the defendants on the Section 1983 claims, Wilber's claims necessarily fail to pass the narrower MCRA test." The Magistrate Judge also noted that, in light of its ruling that there was no genuine issue of material fact as to whether the officers lacked probable cause to arrest Wilber for disturbing the peace, there was no need to "address the parties' qualified immunity arguments."

The Magistrate Judge then turned to a consideration of Wilber's remaining state law claims: false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. The Magistrate Judge noted that Wilber's false arrest, false imprisonment, and malicious prosecution claims could survive summary judgment only if there was a genuine dispute of material fact as to whether the officers lacked probable cause to arrest Wilber. The Magistrate Judge then entered summary judgment for defendants on those three state claims.

As to the fourth state claim, intentional infliction of emotional distress, the Magistrate Judge entered summary judgment as well. The Magistrate Judge found that there was no genuine

issue of material fact in dispute as to whether the officers were "carrying out their obligations as law enforcement officials." Thus, the Magistrate Judge concluded that there was no genuine issue of disputed fact concerning whether the officers' conduct could be "deemed extreme and dangerous," as, in light of Lund v. Henderson, 22 F. Supp. 3d 94, 106 (D. Mass. 2014), and Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007), the officers' conduct would have to have been deemed in order for the officers to be liable for the intentional infliction of emotional distress.

Finally, the Magistrate Judge separately considered whether summary judgment should be granted to the third defendant, Rogers, as to all of Wilber's claims, state and federal. The Magistrate Judge determined that the record clearly showed that Rogers was not involved in Wilber's arrest and that he did not even read the police report on the day of the arrest. The Magistrate Judge thus determined that a reasonable jury could not find Rogers to have had a sufficient "personal connection" with the underlying arrest to be subject to liability on any of Wilber's claims in light of Eason v. Alexis, 824 F. Supp. 2d 236 (D. Mass. 2011), which holds that, under Massachusetts law, a "police officer does not 'arrest' a suspect unless he physically seizes the suspect or the suspect submits to his authority and control," id. at 242.

With the summary judgment ruling in place, Wilber then filed this timely appeal in which he seeks to have that ruling

overturned as to each claim and as to each defendant.  Our review of the District Court's grant of summary judgment to the defendants is de novo.  Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010). We must "affirm if the evidence, viewed in the light most favorable to [the] plaintiff[], shows that there is no genuine issue as to any material fact and that the [officers are] entitled to summary judgment as a matter of law."  Abreu-Guzmán v. Ford, 241 F.3d 69, 73 (1st Cir. 2001).

## II.

We begin our consideration of the challenge to the ruling below by addressing the portion of that ruling that addresses Wilber's only federal law claim, which Wilber brings pursuant to 42 U.S.C. § 1983.  The District Court based its ruling on this claim on its determination that the record clearly showed that there was probable cause to arrest Wilber for disturbing the peace, see Mass. Gen. Laws ch. 272, § 53, and that no reasonable jury could find otherwise.  Wilber contends on appeal, as he did below, that this conclusion is wrong.  And he also challenges the defendants' arguments regarding the other state law offenses that the defendants identify as ones for which no reasonable jury could find the officers lacked probable cause to arrest Wilber.[1]  But,

_____

[1] Wilber does not dispute the defendants' contention that, notwithstanding that Wilber was ultimately charged only with disorderly conduct, the grant of summary judgment on his § 1983 claim must be affirmed so long as there was probable cause to

- 10 -

we need not address the merits of Wilber's various arguments on this score because, as the defendants contend, we may affirm the grant of summary judgment on qualified immunity grounds. See Sands v. Ridefilm Corp., 212 F.3d 657, 662 (1st Cir. 2000) ("There can be no question of our power to rely on a different ground than the district court did in affirming its judgment[.]").

In determining whether a government official is entitled to qualified immunity under § 1983, we must determine not only whether the official violated a federal statutory or constitutional right, Ciolino v. Gikas, 861 F.3d 296, 302 (1st Cir. 2017), but also "whether the right was 'clearly established' at the time of" the challenged governmental conduct, id. at 303. A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (citations and alterations omitted). And, a government official, in consequence of qualified immunity, may not be held liable under § 1983 unless the official is found to have violated a federal law right that is clearly established. Id.

We have explained that, with respect to a § 1983 claim that seeks to hold a police officer liable for making a warrantless arrest without probable cause, "if the presence of probable cause

---

arrest Wilber for any of the state law offenses that the defendants identify.

- 11 -

is arguable or subject to legitimate question, qualified immunity will attach." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004).  We also have made clear that police officers are, in determining whether probable cause exists to make a state law arrest, entitled to qualified immunity for their reasonable but mistaken assessments of the bounds of state law.  Cortés-Reyes v. Salas-Quintana, 608 F.3d 41, 51–52 (1st Cir. 2010) (holding that defendants were protected by qualified immunity because the underlying state law was uncertain, and "any conclusions we might draw about the relevant Commonwealth law would be uncertain at best").

Here, as we have noted, the defendants identify two state law offenses for which an officer reasonably could have determined that there was probable cause to arrest Wilber beyond the two state law offenses (disorderly conduct and disturbing the peace) that the Magistrate Judge considered.  In affirming the grant of summary judgment on qualified immunity grounds, we focus on only one of these two other state law offenses:  interfering with the duties of a police officer, which is a common law crime in Massachusetts. See Shave, 965 N.E.2d at 227 (affirming the validity of this common law crime); Mass. Gen. Laws 279 § 5 (2017) (providing for the existence of common law crimes); see also Commonwealth v. Tobin, 108 Mass. 426, 426 (1871) (affirming a conviction for a defendant

- 12 -

who had "knowingly and designedly . . . hinder[ed], resist[ed] and oppose[d] a police officer").

The defendants contend that the record shows that there was probable cause to arrest Wilber for this offense for the following reasons. They argue that the record shows that, at the time of the arrest, Kinsella and Curtis "were engaged in the lawful performance of their duties to keep citizens out of the easement area and worksite for the safety of the public and the VCS crewmembers." And, the defendants further argue, Wilber "refused numerous requests to leave the worksite." Thus, they contend that the officers had probable cause to arrest Wilber for this offense, given that state law supports the conclusion that an individual commits this offense by "knowingly and designedly . . . hinder[ing], resist[ing], and oppos[ing], against the peace of the Commonwealth." See Tobin, 108 Mass. at 426; see also Docket No. 1557 CR 000243 (Wrentham Dist. Ct. 2015) (charging a defendant with the crime of interference with a police officer for "intimidat[ing], hinder[ing] or interrupt[ing] a police officer in the lawful course of his or her duty."). The defendants go on to assert that, at the least, the record indisputably shows that they acted reasonably in so concluding. As a result, they contend that, at a minimum, the record shows that they are entitled to summary judgment on qualified immunity grounds and thus that

the ruling below granting them summary judgment on this claim must be affirmed.

In response, Wilber chiefly trains his focus on whether there was probable cause to arrest him for disturbing the peace or for disorderly conduct, and he gives only scant attention to this independent ground for effecting his arrest, in which interfering with the duties of a police office is the relevant offense. Wilber does assert that his actions challenging the clearing of the vegetation are protected by the First Amendment and that the cases that the defendants cite to show that his conduct at the worksite suffices to support an arrest for the crime of interfering with the duties of a police officer each involved the use of physical force against the officer, which did not occur here.

But, for purposes of qualified immunity, it is not enough to show that the officers may have made a mistaken determination about whether Wilber's conduct provided probable cause to conclude that he had committed the offense for which he was arrested. Wilber must show that it was clear under state law that there was not probable cause to arrest him for this crime. See Cox, 391 F.3d at 31. And, with respect to that question, Wilber cites no authority -- and we are aware of none -- that would suggest that it was clear at the time of his arrest that this offense does not encompass the particular circumstances that the officers confronted.

After all, Wilber does not dispute that Kinsella and Curtis were present at the worksite for a legitimate law enforcement reason, that he placed yellow tape across the worksite which the officers had to take down, or that he then remained on the site after those officers repeatedly requested that he leave in consequence of his actions and even after the officers had informed him that he would be arrested if he failed to comply with their request that he leave. To be sure, Wilber is right that there is nothing in the record to suggest that he had any physical contact with the officers. But Wilber cites to no Massachusetts authority that would indicate such contact is a requirement of the crime, nor does he make any argument as to why it would be unreasonable to conclude that no such requirement exists. Rather, the cases he does cite for the proposition that physical contact is required merely show that one can commit the crime by engaging in such conduct, see Shave, 81 Mass. App. Ct. 1131; Tobin, 108 Mass. at 429 (describing this crime to include an "affray or assault," but failing to say that such physical contact is a requirement of the offense), and not that this offense imposes any requirement that such conduct must have occurred. See Tobin, 108 Mass. at 426.

Thus, while the defendants bear the burden of proving that they are entitled to summary judgment on qualified immunity grounds, we conclude that that they have met that burden here.

Accordingly, we affirm the grant of summary judgment on this ground.

## III.

We turn next to the portions of the summary judgment order that concerns Wilber's five state law claims. Those claims are, to recap, for deprivation of civil rights under the Massachusetts Civil Rights Act (MCRA), intentional infliction of emotional distress, malicious prosecution, false arrest, and false imprisonment.

The District Court granted the defendants' motion for summary judgment to all three defendants on all five state law claims. On appeal, Wilber asks us to reverse the summary judgment ruling as to each of these state law claims as to each defendant. He does so on the ground that there is a genuine issue of material fact as to each claim that precludes the grant of summary judgment.

We begin by noting that each of the state law claims at issue is in federal court solely as a result of an exercise of supplemental jurisdiction. See 28 U.S.C. § 1367. Given our decision to affirm the grant of summary judgment as to the § 1983 claim, however, there is no longer any federal claim in this case. And the Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and

- 16 -

comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also 28 U.S.C. § 1367(c)(3).

In accord with that guidance, moreover, we have held that, when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve "the interests of fairness, judicial economy, convenience, and comity." See Desjardins v. Willard, 777 F.3d 43, 45-46 (1st Cir. 2015) (citation omitted); Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc., 748 F.3d 387, 392 (1st Cir. 2014). We have also held that, under this standard, it can be an abuse of discretion -- if no federal claim remains -- for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts. Desjardins, 777 F.3d at 45-46.

Nevertheless, as just noted, Wilber does not argue on appeal that, once the federal claim was dismissed on summary judgment (as we have determined that the District Court rightly held), it was an abuse of discretion for the District Court to retain jurisdiction over the pendent state law claims and thus that the grant of summary judgment as to the pendent state law claims must be vacated per Desjardins. Wilber instead asks us to

overturn the summary judgment ruling as to all of the pendent state law claims solely on the ground that the Magistrate Judge erred, as to each of those claims, in concluding that there was no genuine issue of material fact that would preclude granting summary judgment to the defendants. Thus, as we are confronted with only this limited challenge to the ruling below as to the five pendent state law claims, we see no reason not to affirm at least those portions of the ruling granting summary judgment that are so plainly correct that no substantial question of state law is presented. See Disher v. Info. Res., Inc., 873 F.2d 136, 141 (7th Cir. 1989) (affirming as "sensibl[e]" a district court's decision to "take a quick look" to determine whether remaining state law claims "could perhaps be wound up then and there").

Against this background, we affirm the grant of summary judgment as to Wilber's MCRA claim as to all three defendants, as our reason for affirming the grant of summary judgment to the defendants on Wilber's § 1983 claim necessarily compels that result. See Kelley v. LaForce, 288 F.3d 1, 10 (1st Cir. 2002) (citing Duarte v. Healy, 537 N.E.2d 1230, 1232 (Mass. 1989) ("The same qualified immunity standard that applies under § 1983 has also been held to apply to claims under the MCRA[.]")). We likewise affirm the District Court's grant of summary judgment to all defendants on Wilber's claim for intentional infliction of emotional distress. Even if Wilber's cursory treatment on appeal

of the Magistrate Judge's grant of summary judgment on the intentional infliction of emotional distress claim as to each defendant does not amount to a waiver of his challenge to that ruling, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."), Wilber identifies nothing in the record that could support a conclusion that the officers "intended to inflict emotional distress or . . . knew or should have known that emotional distress was the likely result of [their] conduct[,]" Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (quoting Agis v. Howard Johnson Co., 355 N.E.2d 315, 318 (Mass. 1976)).

That still leaves, though, the portion of the District Court's order that grants summary judgment to each of the defendants on Wilber's three remaining pendent state law claims, which are for malicious prosecution, false arrest, and false imprisonment. Here, things are a bit more complicated.

With respect to Rogers, we have no trouble affirming the grant of summary judgment as to the malicious prosecution claim because Wilber makes no argument as to how Rogers -- who, by Wilber's own account, was involved only in booking Wilber -- could be liable for malicious prosecution. In particular, Wilber has not identified any evidence in the record that could support a finding that Rogers had an "improper purpose" in taking the action

- 19 -

that he did, notwithstanding that proof of such a purpose is an essential "element of malicious prosecution."  See Chervin v. Travelers Ins. Co., 858 N.E.2d 746, 756, 758 (Mass. 2006) ("We . . . adopt the 'improper purpose' formulation . . . [for] the element of 'malice.'").

Similarly, we have no trouble affirming the grant of summary judgment as to Rogers on the false arrest claim.  As Wilber acknowledges, Massachusetts law precludes liability for false arrest for an officer who does not "participate[] in the arrest" and acts "in good faith and in the performance of his duties." See Mass. Gen. Laws Ann. ch. 263, § 3.  But, Wilber argues only that Kinsella and Curtis directly participated in the arrest, not that Rogers did as well.  Nor does Wilber argue that Rogers' involvement in the booking constituted participation in Wilber's arrest or, for that matter, that Rogers failed to act "in good faith and in the performance of his duties" in undertaking the booking.  Id.  Thus, as to this claim against Rogers, we see no basis for overturning the grant of summary judgment.

With respect to the grant of summary judgment to Rogers on the claim of false imprisonment, though, we do not affirm, just as we do not affirm the grant of summary judgment to Kinsella and Curtis with respect to the claims of false imprisonment, false arrest, or malicious prosecution.  Unlike the MCRA and intentional infliction of emotional distress claims just addressed, the merits

of the summary judgment ruling as to these claims -- for false imprisonment as to Rogers and for false arrest, false imprisonment, and malicious prosecution as to Kinsella and Curtis -- necessarily turn on issues that are "best resolved in state court," Desjardins, 777 F.3d at 46 (quoting Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)).

As to the claims of false arrest and false imprisonment against Kinsella and Curtis, the merits of the summary judgment ruling depend on whether a jury could reasonably find that the officers lacked probable cause to arrest Wilber. That question, however, necessarily turns in part on a judgment about an issue that the parties sharply disagree about and that our resolution of the one federal claim did not require us to address -- the right definition of the scope of each of the state law offenses that the defendants have identified as providing a basis for the arrest. And, with respect to the claim of false imprisonment against Rogers, yet another contested point of state law presents itself -- namely, whether, as Wilber contends, Rogers' role in "booking" Wilber precludes Rogers from claiming the protection conferred by Mass. Gen. Laws. ch. 272 § 53.

Finally, as to the claims of malicious prosecution lodged against Kinsella and Curtis, contested state law issues arise once again. For, even if we could bypass the probable cause inquiry, we still would then have to decide whether a jury

- 21 -

reasonably could find that the officers had the improper purpose required to trigger liability for that tort.

Thus, rather than attempt, with respect to these issues, to resolve the parties' disagreements about how best to construe state law in light of the record, we follow our approach in Desjardins. We thus vacate the grant of summary judgment to all three officers as to Wilber's claim for false imprisonment, as well as to Wilber's claims for false arrest and malicious prosecution to Kinsella and Curtis, and remand these claims to state court.

## IV.

We **affirm** the entry of summary judgment as to Officers Kinsella, Curtis, and Rogers on the intentional infliction of emotional distress claim and the claims under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, § 11I, and as to Officer Rogers on the malicious prosecution and false arrest claims. We **vacate** the entry of summary judgment as to Officers Kinsella and Curtis on the malicious prosecution, false arrest, and false imprisonment claims, and as to Officer Rogers on the false imprisonment claim, and we **remand** with instructions that the District Court remand those claims to state court. Each party shall bear their own costs.