Not for Publication in West's Federal Reporter

# United States Court of Appeals

## For the First Circuit

No. 16-2444

JWAINUS PERRY,

Plaintiff, Appellant,

v.

LUIS S. SPENCER, Commissioner; THOMAS DICKAUT, Former
Superintendent; ANTHONY MENDOSA, Former Deputy of
Classification; JAMES SABA, Superintendent; ABBE NELLIGAN,
Deputy of Classification; PATRICK TOOLIN, Correctional Program
Officer; KRISTIE LADOUCER; CAROL MICI; THOMAS NEVILLE,

Defendants, Appellees,

JENS SWANSON, Property Officer,

Defendant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. M. Page Kelley, Magistrate Judge]

---

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

---

Jwainus Perry on brief pro se.
Nancy Ankers White, Special Assistant Attorney General, with
whom, Sheryl F. Grant, Counsel, was on brief, for appellee.

---

August 29, 2018

---

**Per Curiam**.  Jwainus Perry, a Massachusetts state prison inmate, brought an action under 42 U.S.C. § 1983 against a number of Massachusetts Department of Correction ("DOC") officials claiming, inter alia, procedural due process violations based on his confinement in non-disciplinary segregation for over 600 days. Perry now seeks review of the district court's determination that defendants were entitled to qualified immunity on that claim. He has also filed a motion to expand the record. To the extent the motion seeks to expand the record to include documents not presented to the district court, it is denied, as the material is outside the purview of Fed. R. App. P. 10(e). See United States v. Rivera-Rosario, 300 F.3d 1, 9 (1st Cir. 2002) (Rule 10(e) "is not a procedure for putting additional evidence, no matter how relevant, before the court of appeals that was not before the district court") (internal quotation marks omitted). As to the merits of the appeal, we affirm the district court's September 30, 2016, Memorandum and Order for the reasons that follow.

## BACKGROUND

We assume familiarity with the relevant facts, which are set out at length in the district court's decision and recounted only briefly here.

Since 2004, Perry has been in the custody of DOC, sentenced

to life without parole for first-degree murder. In December 2010, after prison authorities received information indicating that Perry was threatening gang-related retaliation and assault, Perry was placed in administrative segregation in a Special Management Unit ("SMU") at Souza Baranowski Correctional Center ("SBCC") on "awaiting action" status, pending investigation; Perry was also awaiting custody level classification, having just been transferred to SBCC from another institution. DOC officials had earlier determined that Perry was a member of a "Security Threat Group" ("STG") or gang, known as Academy Homes, and SBCC officials had concerns about ongoing tensions between Academy Homes and a rival STG. SBCC officials determined that administrative segregation was necessary because Perry posed an immediate threat to the safety and security of the institution. Perry denied any gang affiliation and challenged the reliability and sufficiency of the information supporting both his STG designation and the determination that he posed a security threat.

In February 2011, a classification decision was made to screen Perry for out-of-state placement due to STG-related security concerns. Perry remained in the SMU on awaiting action status, first at SBCC and then at the Massachusetts Correctional Institution ("MCI") at Cedar Junction for a total of approximately fifteen consecutive months, interrupted only by a ten-day stay in the health services unit after going on a hunger strike to protest

his prolonged confinement in the SMU. After fifteen months, Perry was transferred to a prison in Connecticut for six months. Upon return to Massachusetts, he was again placed in an SMU at MCI-Cedar Junction for an additional period of five months. In February 2013, Perry was released into the general population at MCI-Shirley. In total, Perry spent 611 days in administrative segregation.

The conditions in the SMU were akin to solitary confinement. Throughout Perry's SMU confinement, prison officials reviewed Perry's SMU placement and awaiting action status approximately three times per week. Perry was informed that the administrative reviews had occurred and that a decision to continue his awaiting action status had been made, but he was not involved in the review process and there was no means of appealing the status review determinations.

## DISCUSSION

### A. Legal Standards

We review de novo the district court's determination that defendants were, as a matter of law, entitled to qualified immunity with respect to the procedural due process claim based on Perry's extended placement in the SMU. Wilber v. Curtis, 872 F.3d 15, 20 (1st Cir. 2017). We "must 'affirm if the evidence, viewed in the light most favorable to [the] plaintiff[], shows that there is no genuine issue as to any material fact and that the [officers are]

entitled to summary judgment as a matter of law.'" Id. (quoting Abreu-Guzmán v. Ford, 241 F.3d 69, 73 (1st Cir. 2001)).

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). Thus, to avoid summary judgment for the defendant based on qualified immunity, a plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the right allegedly violated was clearly established at the time of conduct in issue. See Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015) ("The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation, and it is a heavy burden indeed"); Lopera v. Town Of Coventry, 640 F.3d 388, 396 (1st Cir. 2011) ("A finding that a right was not clearly established at the time of the alleged violation is sufficient to warrant a finding of qualified immunity").

The "clearly established" inquiry has two components. Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017). First, a plaintiff must "identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the

constitutional norm." Id. (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). "[W]e examine 'not only Supreme Court precedent, but all available case law, including both federal cases outside our own circuit, and state court decisions of the state wherein the officers operated[.]" Wilson v. City of Boston, 421 F.3d 45, 56-57 (1st Cir. 2005) (quoting Suboh v. District Attorney's Office, 298 F.3d 81, 93 (1st Cir. 2002) (citations omitted)); see Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 143-44 (1st Cir. 2001). Second, "the court must evaluate 'whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law.'" McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017), cert. denied, 138 S.Ct. 1311 (2018) (quoting Alfano, 847 F.3d at 76). "These inquiries are carried out with the understanding that qualified immunity is meant to shield 'all but the plainly incompetent or those who knowingly violate the law.'" McKenney, 873 F.3d 75 at 81 (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017) (per curiam)) (citation omitted).

**B. Procedural Due Process**

Perry claims that defendants violated his right to procedural due process by confining him in the SMU without adequate justification, opportunity to be heard, meaningful periodic review, or avenue for appealing his placement. He contends that the stated reasons for his placement in the SMU were used as a pretext for indefinite confinement in restrictive segregation, and

that the periodic reviews by defendants were perfunctory. To prevail on this claim, Perry must demonstrate (1) that defendants deprived him of a cognizable liberty interest, (2) without constitutionally sufficient process. Swarthout v. Cooke, 562 U.S. 216, 219 (2011).

Inmates do not have a protected liberty interest in avoiding restrictive conditions of confinement unless those conditions "'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). As the Court recognized in Wilkinson, however, "the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." Wilkinson, 545 U.S. at 223. The Wilkinson Court found it unnecessary to define "atypical and significant hardship" because it found that the conditions in that case met that standard "under any plausible baseline." 545 U.S. at 223. There, inmates challenged their assignment to administrative segregation in Ohio's "supermax" prison, where the conditions were "sever[e]" and "synonymous with extreme isolation." Id. at 214. The Court did not find that the conditions created a liberty interest by themselves, however; it also relied on the fact that placement in the supermax facility was indefinite and it disqualified otherwise eligible

- 7 -

inmates from consideration for parole. Id.

In 2012, the Massachusetts Supreme Judicial Court considered whether ten months in the SMU at SBCC on awaiting action status satisfied the "atypical and significant hardship" standard. LaChance v. Commissioner of Correction, 463 Mass. 767, 776-77 (2012). Noting that the restrictive conditions in the SMU were substantially similar to those described in Wilkinson, and far more restrictive than the conditions in the general population unit, the SJC concluded that the ten-month period of confinement was sufficient to satisfy the standard and implicate a protected liberty interest subject to due process protections, and further held that the interest attaches after ninety days. See id. However, the Court acknowledged that it was announcing a new rule, and that up to that point, no federal or state court decision had clearly articulated the point at which a liberty interest in avoiding segregated confinement arose. See id. at 778.

Noting that Perry was released from the SMU just after LaChance was decided, the district court here reached the same conclusion as the SJC, and found that defendants were entitled to qualified immunity because it would not have been obvious to prison officials in 2010 whether or at what point Perry's confinement in the SMU on awaiting action status became "atypical and significant." We agree. While the restrictive conditions in the SMU were substantially similar to those described in Wilkinson, other

circumstances were arguably distinguishable and, while a number of courts had, prior to 2010, held that periods of solitary confinement shorter than Perry's were sufficient to give rise to a liberty interest, see, e.g., Marion v. Columbia Corr. Inst., 559 F.3d 693, 697-99 & nn. 3-4 (7th Cir. 2009) (240 days in segregated confinement potentially implicates liberty interest), other courts had found comparable periods insufficient. See, e.g., Estate of DiMarco v. Wyoming Dep't of Corr., 473 F.3d 1334 (10th Cir. 2007) (14 months in administrative segregation insufficient). Given the varying approaches to measuring atypicality and the absence of any bright-line rule or consensus as to what combination of conditions and duration of confinement in administrative segregation was sufficient to implicate a liberty interest and trigger due process, or at what point that interest arose, the contours of the liberty interest were not sufficiently defined as to place the constitutional question "beyond debate[.]" See Mullenix, 136 S.Ct. at 308 ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate" (internal quotation marks omitted)).

Further, even assuming that defendants should have known that due-process requirements attached to Perry's placement in the SMU at some point during his extended period of confinement, the level of process due in the circumstances was not clearly established. In Wilkinson, the Supreme Court endorsed "informal, nonadversary

procedures" consistent with those set forth in Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979), and Hewitt v. Helms, 459 U.S. 460 (1983), where the liberty interest in avoiding indefinite placement in a supermax prison was at stake. 545 U.S. at 225-28. The essential elements of this informal level of process include "some notice" to the inmate of the basis for confinement, an opportunity for the inmate to present his views, either in a written statement or otherwise, to the decisionmaker, "within a reasonable time" after the transfer to administrative segregation, and "some sort of periodic review of the confinement" to ensure that prison officials are not using administrative segregation as "a pretext for indefinite confinement of an inmate." Hewitt, 459 U.S. at 472, 476-77 & n.9; see Wilkinson, 545 U.S. at 225-28.

Determining the sufficiency of process in a particular situation requires application of the Mathews v. Eldridge balancing test, which weighs three factors: (1) the private interest affected by the government action; (2) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'"; and (3) the state's interest, "'including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" Wilkinson, 545 U.S. at 224-25 (quoting Mathews, 424 U.S.

319, 335 (1976)).

In Wilkinson, the placement process involved three levels of review and provided inmates two opportunities to file written objections. The placement decision was reviewed after thirty days, and then again on an annual basis, using the same three-tiered system of review. The Court concluded that the procedures were constitutionally sufficient, but did not find that they were the minimum required, emphasizing that the standards are flexible, particularly in the prison context, and the level of process due will vary with the demands of a particular situation. Id. at 224. The placement process followed in Perry's case provided fewer safeguards. Unlike the classification process, which allows inmates an opportunity to be heard and multiple levels of review, the decision to place Perry in an SMU on awaiting action status provided only an informal review process. Perry's SMU confinement on awaiting action status was first reviewed within 72 hours of his initial placement, and his status was reviewed about three times a week thereafter. Perry received periodic written notifications that he was on awaiting action status pending investigation and, later, pending out-of-state placement, and that administrative reviews of his placement had been conducted. He was permitted to raise concerns about his status with officials on an informal basis, but he was not provided an opportunity to participate in the administrative reviews or to test the purported

basis for his continued confinement, was not informed of steps he could take to mitigate the perceived need for continued segregated confinement, was not given any conditional release date, and was not provided any explicit opportunity to contest his placement. Perry asserts that the periodic reviews were perfunctory, noting that he received the same boilerplate notice at every review, and suggests that they were pretextual, as he was never interviewed in connection with any investigation into his STG status, was not advised of its progress or outcome, and was not told when or why his status shifted from awaiting action pending investigation to awaiting action pending out-of-state placement.

In LaChance, the SJC concluded that these procedures were insufficient to provide meaningful review and safeguard the inmate's interest in avoiding arbitrary confinement in severe conditions, and held that segregated confinement on awaiting action status for longer than 90 days required notice of the basis for the placement, a hearing at which the inmate could contest the asserted rationale for the placement, and a post-hearing written notice explaining the reviewing authority's decision. LaChance, 463 Mass. at 776-77. But the SJC acknowledged that it was announcing these requirements for the first time, and Perry was released into the general population shortly after that decision issued.

Perry suggests that, even if defendants could not have been

expected to anticipate the precise requirements outlined in LaChance, it was clearly established after Wilkinson that the "informal, adversary procedures" required where an inmate's interest in avoiding atypical and significant hardship was at stake had to include some sort of meaningful periodic review. But Wilkinson did not set any standards for such review in this context. Moreover, in Hewitt, the Court emphasized the "broad discretionary authority" prison administrators have in managing a prison and maintaining security, and recognized that periodic review was flexible and could be based on a "wide range of administrative considerations" such as "facts relating to a particular prisoner," including misconduct charges and any ongoing investigations, and "on the officials' general knowledge of prison conditions and tensions[.]" 459 U.S at 477 n.9. Defendants submitted evidence demonstrating that those considerations at least ostensibly factored into their review. In the absence of any authority more specifically defining the review requirements in these circumstances, Perry cannot show that no official could reasonably have believed the review was adequate. See Mlodzinski v. Lewis, 648 F.3d 24, 33 (1st Cir. 2011) ("'Immunity exists even where the abstract "right" invoked by the plaintiff is well-established, so long as the official could reasonably have believed "on the facts" that no violation existed'") (quoting Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002)).

- 13 -

## CONCLUSION

In sum, at the time Perry was confined in the SMU on awaiting action status, it was not clearly established whether or at what point a protected liberty interest arose, and the procedural protections required in that circumstance had been defined only at a high level of generality. Defendants were therefore entitled to qualified immunity. Perry's "Late Motion to Suspend the Rules" is granted, and the judgment of the district court is affirmed.