# United States Court of Appeals
## For the First Circuit

Nos. 18-1372
     18-1608

BETH ZELL, individually and on behalf of K.Z., a minor;
MARK ZELL, individually and on behalf of K.Z., a minor,

Plaintiffs/Cross-Appellees,

KELSEY ZELL,

Plaintiff, Appellant/Cross-Appellee,

v.

BARRY RICCI, Superintendent of Chariho Regional School District,
in his official capacity; RYAN BRIDGHAM, Dean of Students,
Chariho High School, in his individual and official capacities;
LAURIE WEBER, former Principal of Chariho High School, in her
individual and official capacities; CRAIG LOUZON, former Chair
of the Chariho School Committee, in his individual and official
capacities,

Defendants, Appellees/Cross-Appellants,


CHARIHO REGIONAL SCHOOL DISTRICT, by and through its
Superintendent, Barry Ricci; JON ANDERSON, Chariho Regional
School District Attorney; CHARIHO SCHOOL COMMITTEE, by and
through its Chairperson, Sylvia Stanley, in her official
capacity; RACHEL MCGINLEY, in her individual capacity; RHODE
ISLAND DEPARTMENT OF EDUCATION, by and through its Commissioner,
Ken Wagner; KEN WAGNER, in his official and individual
capacities; RHODE ISLAND COUNCIL OF ELEMENTARY AND SECONDARY
EDUCATION, by and through its Chair, Daniel McConaghy; DANIEL P.
MCCONAGHY, in his individual and official capacities,

Defendants, Appellees.

———————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

---

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

---

Paige A. Munro-Delotto, with whom Munro-Delotto Law, LLC was on brief, for appellant/cross-appellee.

Mark T. Reynolds, with whom Reynolds, DeMarco & Boland, Ltd., Sara A. Rapport, and Whelan Corrente & Flanders were on brief, for appellees/cross-appellants Ryan Bridgham, Laurie Weber, Craig Louzon, and Barry Ricci.

Mark T. Reynolds, with whom Reynolds, DeMarco & Boland, Ltd., Sara A. Rapport, Whelan Corrente & Flanders, Jon M. Anderson, and Brennan, Recupero, Cascione, Scungio, & McAllister, LLP were on brief, for appellees Chariho Regional School District, Chariho School Committee, and Jon M. Anderson.

Paul Sullivan, Sullivan Whitehead & DeLuca LLP, and Anthony F. Cottone, Rhode Island Department of Education, on brief for appellees Rhode Island Council on Elementary and Secondary Education, by and through its Chair, Barbara Cottam, and Rhode Island Department of Education, by and through its Commissioner, Ken Wagner.

---

April 20, 2020

---

THOMPSON, <u>Circuit Judge</u>.  High school is not without its unique challenges, this much we know; we also know that the same can be said for bringing a civil lawsuit and navigating the rigors associated with contentious litigation.  Each of these dynamics comes together in the case now before us:  Kelsey Zell ("Zell") appeals the United States District Court for the District of Rhode Island's dismissal of her case.  Zell advanced a slew of claims against the various defendants below,[1] but of the many claims

---

[1]  Here's the lowdown on how we'll refer to the parties involved.  The lone appellant before us is Zell -- her parents have not challenged the dismissal of their own claims.  But as we lay out what the complaint asserts and what happened below, we sometimes refer to Zell, her father, Mark Zell ("Mr. Zell"), and her mother, Beth Zell, collectively as "the Zells."

And as for the defendants, we identify all the players up front since they appear as individuals throughout this tale.  The defendants and cross-appellants include:  Barry Ricci, Superintendent of Chariho Regional School District ("Superintendent Ricci") (Superintendent Ricci passed away after Zell filed this appeal, and by virtue of a granted joint motion, Zell is no longer pursuing her claims against him in his individual capacity, and Superintendent Ricci's cross-appeal for sanctions has been dismissed as well; as to the claims against Superintendent Ricci in his official capacity, Jane L. Daly has been substituted under Rule 43(c)(2) of the Federal Rules of Appellate Procedure as the representative of Chariho Regional School District); Ryan Bridgham, Dean of Students at Chariho High School ("Dean Bridgham"); Laurie Weber, former Principal of Chariho High School ("Principal Weber"); and Craig Louzon, former Chair of the Chariho School Committee ("Chairperson Louzon").

Appearing strictly as defendants (not cross-appealing anything), we have:  Chariho Regional School District ("CRSD"); Jon Anderson, Chariho Regional School District's attorney ("Attorney Anderson") (Zell is not pursuing claims against Attorney Anderson on appeal, but he still has a role to play, hence his inclusion in this list); Chariho School Committee ("the Committee"); Rachel McGinley ("McGinley"); Rhode Island Department of Education ("RIDE"); Ken Wagner, Commissioner of RIDE

dismissed, she has whittled down her appellate challenges to a select few (as we'll momentarily discuss). Also before us is the cross-appeal by the defendants who take issue with the denial of their motion for sanctions against Zell's counsel.

All told, after careful consideration of this dense record and for the reasons we will explain, we affirm the dismissal of the federal-law claims, the dismissal of the state-law negligent training/supervision claim, the motion to amend as it relates to those issues, and the denial of the motion for sanctions. But we vacate the dismissal of the state-law negligence claim.

## FACTS AND TRAVEL

Our factual narrative is crafted from the facts presented in the complaint's allegations, which, for purposes of our review, we accept as true and construe in the light most flattering to Zell's cause (i.e., the account that follows is not necessarily what actually happened, but rather it's what the complaint says happened). See, e.g., AER Advisors, Inc. v. Fid. Brokerage Servs., LLC, 921 F.3d 282, 283 (1st Cir. 2019) (citing Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st

_____

("Commissioner Wagner"); Rhode Island Council of Elementary and Secondary Education ("the Council"); and Daniel P. McConaghy, chair of the Council.
    We sometimes refer to the "School Defendants," whom we've lumped together based on the claims against them -- they include Superintendent Ricci (in his official capacity), Principal Weber, Dean Bridgham, Chairperson Louzon, and CRSD.
    Keep this cheat-sheet handy in the pages to come.

Cir. 2012)).  Zell's complaint says a whole lot.  However, given the issues remaining on appeal, we only lay out the following details which are relevant to and provide important context for the claims now before us.

**Incident, Suspension, and Immediate Aftermath**

The event that served as the springboard for this litigation took place at Rhode Island's Chariho[2] High School (CHS) on October 16, 2015, which was the Friday of CHS's "Spirit Week," a day historically marked by "mayhem," "increased risk for students," and "school-sponsored bad decisions," as well as "lighthearted and not-so-lighthearted bantering or even aggression."  The day began as it always did, with toga-clad seniors processing into school through a shower of silly string, sprayed both by the seniors themselves and the surrounding underclassmen.  Students were allegedly vandalizing lockers and throwing streamers and litter around in the hallway.  And in addition to the aforementioned "lighthearted and some not-so-lighthearted bantering," there were also "shows of aggressive bantering."

In the midst of this scene, then-junior Zell was on the sidelines of the procession sporting her field hockey uniform as

---

[2] Falling under the header of "you learn something new every day":  Chariho is "[a] district made up of the towns of **Cha**rlestown, **Ri**chmond, and **Ho**pkinton."  <u>See</u> https://www.quahog.org/factsfolklore/index.php?id=43.

a display of school spirit -- like everyone else, she was "indiscriminately" spraying silly string in the air at student passers-by, and some of that silly string landed on then-senior McGinley. Then, while chatting idly with friends and with her back turned towards McGinley, Zell, out of the blue, was attacked. Using her cell phone as a weapon, McGinley sprinted towards Zell and with the "hard edge" of her phone, delivered several "hammer blows" to Zell's head. Zell fell forward, and McGinley ran away laughing.

Zell went to class in pain and confused, then was summoned to Dean Bridgham's office. Once there, Zell had "trouble comprehending" what Dean Bridgham was saying to her, but she did register that McGinley had self-reported hitting Zell. Dean Bridgham sent Zell back to class after asking her a few questions -- not about her wellbeing, though -- then she was called back down to Dean Bridgham's office a little while later, this time with Principal Weber present. The two questioned Zell, after which Dean Bridgham made an unexpected announcement. He informed Zell that she would face a one-day suspension for "fighting (or instigating a fight)" because the school had found out that she supposedly called McGinley a bitch and sprayed McGinley in the face with silly string. Same punishment to befall McGinley.

"[C]rying hysterically" due to the news of her suspension, Zell called her father, who arrived at CHS around 11:00

a.m. and immediately inquired whether anyone had evaluated his daughter for a concussion. No teacher or school official, to that point, had asked Zell about her head injury or suggested that she be sent to the school nurse or otherwise medically evaluated, but upon Mr. Zell's questioning, school officials agreed that it "would be a good idea." Upon evaluating Zell, the school nurse quickly determined she was likely concussed, a diagnosis confirmed at the hospital later that day.

That night, Zell's parents went to the Richmond Police Department intending to file charges against McGinley for assault and battery of their daughter. An officer initially told them that McGinley would be arrested promptly that evening, but later (it's unclear when, exactly), he twice switched gears (both times without explanation): first, he said McGinley would be arrested at school by the School Resource Officer the following Monday; then, he reported that McGinley would not be arrested at all unless Zell also was arrested for disorderly conduct. The Zells were not given a satisfactory explanation for this flip, but they didn't want their daughter facing "unjustified" criminal charges, so they abandoned the criminal-charges approach and formulated a new game plan.

### The Suspension Appeals

So began the Zells' challenge to the school's suspension decision. With Zell at home recovering for six days, her father

first appealed to Superintendent Ricci, providing to him a detailed account of the events as told by Zell and her friends, and corroborated by the surveillance video of the incident. At first, Superintendent Ricci asked to speak with Zell, but ended up upholding the suspension without talking to her directly.

The Zells appealed Superintendent Ricci's decision to the Committee, which held a hearing (roughly four months after the incident took place), during which Attorney Anderson represented CRSD (the school district, remember) and Superintendent Ricci. In the course of the hearing, the Committee played only portions of the video of the incident and refused to consider footage of McGinley striking another student on the head with her cell phone while on a school bus. As Zell tells it, Chairperson Louzon signed the Committee's decision to uphold the suspension "without review or input," and so the suspension stood.

Still aggrieved, the Zells, now represented by counsel, appealed that decision to RIDE, where a two-day hearing ensued with over ten witnesses (all of whom were subjected to direct and cross examination), and which yielded "nearly a foot of transcripts." During that proceeding, Dean Bridgham acknowledged "there was a lack of some needed policy or some related failure by the school district to handle the situation, including [Zell]'s concussion." As for Zell's presentation, amongst her extensive submittals was "an expert witness in investigation" who gave his

take on the surveillance video.  Ultimately, RIDE issued a decision with "two-and-half pages" of analysis upholding the suspension, causing the Zells to take issue with such a "shockingly short" decision, which cited "to literally none of [their] evidence."

Undeterred, the Zells pressed on, appealing RIDE's decision to the Council.  In so doing, the Zells submitted the full record to that point, which included the hefty transcripts, their single-spaced forty-five-page brief, CRSD's eighteen-page opposition brief, and the Zells' thirty-six-page reply.  The hearing saw twenty minutes of argument by the Zells, followed by comments from CRSD's attorney.  After listening to both sides, the Council deliberated and ultimately rendered an oral decision. Siding with Chariho, the Council upheld the suspension, and later followed up with a May 9, 2017 written five-page decision rejecting the Zells' claims of error and affirming the suspension with, as the Zells tell it, "no reasoning whatsoever."

### Federal District Court Proceedings

About a year and a half after the "Spirit Week" incident, the Zells filed an eleven-count, 363-paragraph, forty-nine-page complaint in district court -- more on the specific counts later.[3] Motions to dismiss (under Rules 12(b)(6) (for failure to state a

---

[3] The complaint was amended twice for small errors or omissions.  When we refer to the complaint, we are talking about the second amended complaint.

claim) and 12(b)(1) (for lack of subject matter jurisdiction) of the Federal Rules of Civil Procedure) from all defendants swiftly followed. The Zells objected to each. Upping the ante, a couple of months later, Principal Weber, Dean Bridgham, and Chairperson Louzon filed a motion for sanctions against the Zells' counsel based on what they characterized as excessive and frivolous filings. The district court heard oral arguments on all motions on February 2, 2018.[4]

In a thorough Memorandum and Order issued on March 30, 2019, and pertinent here, the district court, citing failure to state a claim, dismissed Count I (against RIDE and the Council alleging procedural due process violations pursuant to 42 U.S.C. § 1983) and Count II (against the School Defendants alleging equal protection violations pursuant to 42 U.S.C. § 1983). Zell v. Ricci, 321 F. Supp. 3d 285, 296-97 (D.R.I. 2018). And, after first exercising supplemental jurisdiction over the counts of state-law negligence and negligent training/supervision (Counts VIII and

---

[4] In addition to the counts before us on appeal, the complaint contained civil conspiracy claims (Counts III and IV), an administrative appeal of the Council's decision (Count V), assault and battery claims against McGinley (Count VI), a claim for the intentional infliction of emotional distress (Count VII), a defamation claim against all defendants (Count X), and an ADA claim for failure to reasonably accommodate (Count XI). Each of these counts was dismissed -- or supplemental jurisdiction over them was not granted -- and those decisions are not challenged on appeal. Therefore, we recap the disposition specifics only as to the issues that have made their way to us on appeal, fleshing things out as needed along the way.

IX),[5] except for those against McGinley (more on this later), the district court dismissed those counts too, for failure to state claims.  Id. at 302.  Then, finding futility, the district court denied Zell's motion to amend her complaint.  Id. at 304.  Finally, turning to the motion for sanctions, the district court called it a "close call," but in the end denied them.  Id. at 304 n.21.

Now before us, Zell claims as error the district court's dismissal of Counts I and II, as well as its exercise of supplemental jurisdiction over and dismissal of Counts VIII and IX.  For their part, as noted earlier, Dean Bridgham, Principal Weber, and Chairperson Louzon cross-appeal the denial of their motion for sanctions.

## DISCUSSION

Before turning to the merits of Zell's challenges, we revisit our familiar parameters for reviewing Rule 12(b)(6) motions to dismiss, the mechanism by which most of her claims ultimately were rejected.[6]

For starters, it is axiomatic that "[w]e give *de novo* review to a Rule 12(b)(6) [failure to state a claim] dismissal, using the same criteria as the district judge."  Schatz, 669 F.3d

---

[5] On appeal, Zell is chasing down only the negligent training and supervision aspects of Count IX, not the hiring and retention also mentioned in that count as it reads in the complaint.

[6] Certain of the appellate contentions in this appeal merit abuse-of-discretion review, but we'll flag the application of that standard when, down the road, we encounter the need for it.

at 55 (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7, 11-13 (1st Cir. 2011)).  As we've already noted (but it bears repeating), we take as true the allegations of the complaint, as well as any inferences we can draw from them in Zell's favor.  See Ocasio-Hernández, 640 F.3d at 7.  In undertaking our review of the adequacy of the complaint before us,

> our circuit has instructed that the review should be handled like this:  first, "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]" then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."

Zenon v. Guzman, 924 F.3d 611, 615-16 (1st Cir. 2019) (alteration in original) (quoting Schatz, 669 F.3d at 55) (discussing, among other cases, Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); see also Ocasio-Hernández, 640 F.3d at 12.  "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'"  Schatz, 669 F.3d at 55 (quoting Iqbal, 556 U.S. at 679).[7]

---

[7] We pause here to acknowledge and reject Zell's assertions that a pre-Twombly standard applies to the complaint because Twombly didn't actually change the pleading standard, an assertion on which she doubles down in her reply brief.  She insists that the pleading standard did not change with Twombly -- in her view, Twombly simply redefined the existing standard set out in Conley v. Gibson, 355 U.S. 41 (1957).  But she's incorrect.  Her framing

- 12 -

This framework in place, we turn to the dismissals of the federal-law claims. We then consider the intertwined matters of supplemental jurisdiction and dismissal of the state-law negligence claims before concluding with our take on the denial of the motion for sanctions.

## Count I:  Procedural Due Process

On appeal, Zell challenges the dismissal of her procedural due process claims against RIDE and the Council. Before we lay out the particulars of her challenge, we spell out some due process basics. "The threshold question in any claim for denial of procedural due process is whether [a plaintiff was] deprived of a liberty or property interest protected by the United States Constitution." Aponte-Rosario v. Acevedo-Vilá, 617 F.3d 1, 9 (1st Cir. 2010) (citing Lowe v. Scott, 959 F.2d 323, 334 (1st Cir. 1992)). And when a protected interest exists, the analysis turns to a determination of "what process was due." Id. (citing Goss v. López, 419 U.S. 565, 577 (1975) (explaining that "[n]either the property interest in educational benefits temporarily denied nor the liberty interest in reputation, which is also implicated, is so insubstantial that suspensions may constitutionally be imposed by any procedure the school chooses, no matter how arbitrary")).

---

does not accurately track the evolution of the pleading standard, and we decline her invitation to apply outdated tests in our review of the sufficiency of her pleadings.

- 13 -

As we make that determination, we observe that "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Homing in on Zell's claims, her complaint describes her protected interests as the "right and liberty interest in not being deprived of her reputation" as well as a "right to not endure 'stigma' plus a right to not be deprived of present or future educational, scholarship, and job opportunities" because of the blight on her record (the mention of educational opportunity loss smacks of an alleged property interest, though Zell never explicitly says as much). As for Zell's denial of due process allegations, she contends, in Count I, that she was deprived of her protected liberty interests as a result of the actions of RIDE and the Council, particularly when they did not afford her proper notice, opportunity to be heard, and a fair hearing with an impartial decisionmaker. These assertions culminate in the allegation that RIDE and the Council "deprived [Zell] of her liberty interests without due process of law."

Clearly viewing Zell's contentions as failing to state a cognizable claim, defendants filed 12(b)(6) motions to dismiss before the district court. In opposition to defendants' motions, Zell argued that the "[a]llegations in the complaint factually describe the acts and omission that support constitutional due

- 14 -

process violations," and then stated that these defendants "violated [her] Due Process rights to a fair hearing, to an impartial decision maker, a determination based solely on the evidence presented at the hearing, and a reasoned decision stating the evidence upon which the decision relies, and a decision based on precedent."

In its consideration of Zell's claims, the district court determined RIDE and the Council had the better argument and explained why. Understanding her procedural due process argument to be focused primarily on notice, opportunity to be heard, and an impartial decision maker -- unsurprisingly since the district court's analysis tracked Zell's Count I assertions -- the district court applied the Gorman v. University of Rhode Island, 837 F.2d 7, 16 (1st Cir. 1988), factors in explicating its ruling: due process requires "not an 'elaborate hearing before' a neutral party, but simply 'an informal give-and-take between student and disciplinarian' which gives the student 'an opportunity to explain his version of the facts.'" Zell, 321 F. Supp. 3d at 296. Accordingly, Zell, as the district court put it, "received more process than the Constitution dictates." Id.

Before us Zell narrows her focus. Her procedural due process contention solely takes aim at the written decisions issued by RIDE and the Council which she seems to be arguing are unconstitutionally reasoned. The decisions, she posits, are so

deficient in character and content as to constitute insufficient due process. She says that because the RIDE hearing lasted two days, involved ten witnesses, and generated a foot-high pile of transcripts, "the written decision should have been comprehensive and balanced, more in sync with the hearing it was based on." But alas, she bemoans, the analysis in the decision is too short, "cited to virtually no evidence, and only cited to evidence presented by the school district." Further trampling her due process rights, the Council, as Zell tells it, also erred in affirming RIDE's decision with similarly legally insufficient analysis and reasoning to support its adverse ruling. And Zell continues, the district court doubly erred in its own ruling. Had it reviewed her complaint more comprehensively, it would have seen that her due process allegation had been adequately pled. Then, maintaining her fixation on the purported deficiency of the written decisions, Zell argues that the district court applied the wrong legal framework to its scrutiny of her arguments.

As an initial observation, Zell, on appeal, does not precisely point to where any of her purported written-decision-based allegations, as they relate to due process, are borne out in her complaint. Count I never delves into (or even specifically mentions) the written decisions as a basis for the procedural due process violation (contrast this with the clear references to challenging, as a matter of law, proper notice, opportunity to be

heard, and a fair hearing).  And although Count I generally incorporates the paragraphs that precede it, several of which mention the perceived faultiness of the written decisions relative to her administrative appeal claim (Count V, the dismissal of which is not challenged on appeal),[8] Zell does not flesh out in her

---

[8]  The incorporated paragraphs which reference the written decisions read as follows:

198.  After the hearing, the RIDE decision was shockingly short citing to virtually no evidence, citing to literally none of Plaintiffs' evidence, ignoring significant evidence counter to the findings, and relied solely on A. Doe's contradicted and impeached testimony, provided no credibility weighing or reasoning, and justified upholding the suspension after a two day hearing using only approximately two-and-a-half pages discussing the merits of that decision.

199.  Plaintiffs felt that due to the undisclosed ex parte meeting between the Hearing Officer and Defendant Ricci, due to the misrepresentations of facts by Defendant Attorney Anderson, due to the Hearing Officer barring relevant Plaintiffs' evidence and writing a decision not supported by law and facts, that they were deprived of an opportunity to be heard and deprived of an impartial decision maker.

200.  For the reasons above, K.Z., by and through her parents Mark and Beth Zell, then appealed to the Council of Primary and Secondary Education ("Council") assigning a number of errors by RIDE described in Count V.

. . .

214.  On or about May 9, 2017, the Council's Decision was released affirming the discipline; the decision was *only* five pages long and found against Plaintiffs on *all five groups of errors* assigned, but provided *no reasoning whatsoever.*

complaint how those paragraphs support a procedural due process challenge.

But even giving Zell the benefit of the doubt that her complaint should be read as she now contends, we conclude, as RIDE and the Council argue, that Zell's Count I "insufficiently-reasoned-decision" theory was properly dismissed.[9] We so conclude because Zell primarily advances only one legal argument in support of her claim -- one which widely misses the mark. Specifically, says Zell, the district court's reliance on Gorman, 837 F.2d at 16, in its dismissal of her case was misplaced. Rather (as she explains it on appeal), because her fundamental challenge is to the adequacy of the written decisions provided by RIDE and the Council, to answer the question of whether due process required

---

215. The May 9, 2017 Council decision simply decided against all five alleged groups of errors, summarily dismissing any error without any explanation.

216. As such, Plaintiffs judicially appeal the Council's decision as arbitrary, capricious, and unfair and violates the standard required by the Administrative Procedures Act (APA) as alleged in Count V.

[9] RIDE and the Council also encourage rejection of Zell's appellate contentions because, in their view, Zell's argument on appeal sounds an awful lot like an administrative appeal since it is based solely on the adequacy of the written decisions issued by RIDE and the Council. Zell can't pull off this switcheroo, RIDE and the Council argue, because the administrative claim had another life as Count V of the complaint, but supplemental jurisdiction was not extended to it, and its dismissal from the federal case was not appealed. As will become apparent, though, we don't need to contend with this argument.

from each of them a more fulsome rendering, Zell points to Goldberg v. Kelly, 397 U.S. 254, 271 (1970), the Supreme Court's landmark case setting forth the fundamental requisites of procedural due process law. According to Zell, Goldberg explains that "the decision maker should state the reasons for his determination and indicate the evidence he relied on," and, importantly, she has received neither. Id. But here's the rub: even using Zell's preferred case to review her contention, it must be noted that the Goldberg language she emphasizes is only a snippet of the guidance offered by the Court, which went on to add "though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law." Id.

With the complete Goldberg standard in mind, we look at the RIDE and Council decisions about which Zell complains (too short, not enough evidence cited, lack of reasoning) and consider whether she has sufficiently alleged in her complaint that they were so inadequate as to constitute a deprivation of her due process rights.

To begin, we reiterate: Zell's procedural due process count itself, Count I, charges no specific fault with the written decisions. But to the extent Zell is arguing that her complaint more globally asserts that the written decisions form the basis for her procedural due process challenge -- perhaps thinking of paragraphs 198 through 216, as we laid out in footnote 8 -- even

a generous reading of the complaint cannot breathe life into that position. Because what is telling here is this: even if these assertions weren't made only with an eye towards the administrative law claims as they clearly appear to be, the allegations still focus primarily on the opportunity to be heard and the decision makers' partiality. Although Zell does gripe about the written decisions in three of the Count V paragraphs, she makes no allegation that the written decisions themselves were legally deficient, nor does she asseverate how the decisions themselves fall short of what due process demands.

And even applying Goldberg to the information we have, we know that the written decision by RIDE included two-and-a-half pages of analysis and the Council's decision was a five-pager; both decisions provide reasoning, and both cite evidence. Zell fails to explain why the length of these administrative opinions should matter. Nor is it apparent to us how the decisions' failure to address every plausible reason for upholding the suspension decision, or failure to reference every bit of evidence submitted by Zell, makes these opinions constitutionally infirm when, according to Goldberg, the decision maker's decision, though it need be reasoned and make reference to the evidence, nonetheless, "need not amount to a full opinion or even formal findings of fact and conclusions of law." Id.

- 20 -

Moreover, the Supreme Court has specifically addressed what fundamentally fair procedures are generally required for school suspensions of less than ten days. Goss, 419 U.S. at 581-82.[10] It has indicated that the student must first "be told what [s]he is accused of doing and what the basis of the accusation is." Id. at 582. Then, she must be given "an opportunity to explain [her] version of the facts" at an informal hearing. Id. Absent an unusual situation, school officials are not obligated to generate any written opinion, much less hold a trial-like proceeding followed by a multi-page refutation of arguments and evidence. Id. at 583 (remarking that "hearings in connection with short [ten-day] suspensions" need not "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses," and cautioning against "further formalizing the suspension process and escalating its formality and adversary nature"). Accordingly,

---

[10] Surprisingly, on appeal, RIDE and the Council do not mention Goss, which, for a controversy like Zell's, is still the go-to school-suspension case after forty years. On the other hand, Zell quotes an uncontroversial statement from Goss -- "In school suspension cases, 'it disserves both [the student's] interest and the interest of the State if [the student's] suspension is, in fact, unwarranted' and unfortunately the disciplinary process is not an 'accurate, unerring process, never mistaken and never unfair,'" Brief of Plaintiff–Appellant/Cross–Appellee Kelsey Zell at 24 (quoting Goss, 419 U.S. at 579–80) -- and uses it to then conclude that a student facing a ten-days-or-less suspension has an interest that merits due-process protection. This is the extent of Zell's Goss discussion.

we note our agreement with the district court that Zell "received [from these defendants] significantly more process than she was due."[11]   As such, Zell failed to "plausibly narrate a claim for relief," Schatz, 669 F.3d at 55, and the district court did not err when it dismissed her complaint.[12]

### Count II:  Equal Protection

Zell next takes aim at the dismissal of her complaint's equal protection count.  But what, exactly, she's arguing (and whether she's argued it before) depends on who you're asking.

As the School Defendants point out, Zell's arguments below were trained on multiple equal protection violations as described in her complaint and multiple similarly-situated comparator groups -- different groups for different violations of her rights, she explained.  For example, with respect to the "initial discipline event," Zell described the similarly-situated comparator group as a group of students that also participated in "Spirit Week" by spraying silly string, but who, unlike Zell, were not disciplined.  In fact, as the district court observed, such "a

---

[11] It may well be that this meritless procedural due process claim was a frivolous one, but its lack of merit is not targeted by the Rule 11 sanctions motion filed by the cross-appellants, which we discuss further down the line.

[12] As we mentioned before, RIDE and the Council urge that Zell is trying to resurrect her administrative law claim through this procedural due process claim, but there is no need for us to weigh in on this since we affirm the dismissal of this claim on the merits.

wide swath of students" were pled as comparators that none appeared to be sufficiently similar to Zell.  Yet in pleading so broadly, the district court did view her complaint as necessarily alleging -- even if inadequately -- a class-of-one theory.  Zell, 321 F. Supp. 3d at 297.

Notwithstanding her multiplicity of arguments to the district court, before us, we understand Zell to be advancing a class-of-one equal protection claim solely.  Specifically, her theory is that she was singled out and subjected to disparate treatment by the School Defendants, who withheld information during the administrative appeals and misrepresented what happened to administrative decisionmakers, such conduct being a clear departure from standard protocol and, therefore, a violation of her rights.[13]  Zell does not identify the "standard protocol" from which these defendants departed in not providing her a "normal, fair hearing," but she explains that the comparator group for this alleged violation is "other similarly-situated students that were disciplined (for any reason) and this discipline was appealed to the school committee, but these students were given a fair hearing,

---

[13] Zell says instances of withholding of information and misrepresentations include, for example, that the School Defendants withheld a video showing McGinley using her cell phone as a weapon against a different student on another occasion, and also the School Defendants -- incontrovertibly knowing that McGinley had used her cell phone to strike both Zell and another student -- nonetheless asserted that a teenage girl would never use her cell phone as a weapon.

- 23 -

unlike Zell." While Zell concedes that her contentions may have been "inelegantly" described -- "clumsily pleaded," even -- and acknowledges "that she could have alleged the similarly-situated comparators more clearly," she still maintains that she sufficiently pled her class-of-one theory such that her equal protection claim should have survived dismissal, especially with the benefit of every reasonable inference tipping the scales in her favor.

Conversely, the School Defendants say Zell's class-of-one theory is not just inelegantly pled -- she never presented this theory to the district court at all, and it's not discernible in the complaint, so it's waived. And even if not waived, they argue, it is still not a winner because, assuming her pleading could be charitably viewed as stating a basic class-of-one theory, Zell still has not adequately pled comparators to show her differential treatment.[14] Bypassing waiver, we agree.

The Supreme Court has written that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted

---

[14] The School Defendants also argue that Superintendent Ricci, Principal Weber, and Dean Bridgham are qualifiedly immune from suit, but we have no need to reach that issue.

- 24 -

agents." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (alteration in original) (internal quotations and citations omitted). As for a "class of one" equal protection claim, such a claim exists "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (collecting cases); see also Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639-40 (1st Cir. 2013). Specific to this class-of-one arena, we've said the "plaintiff bears the burden of showing that [her] comparators are similarly situated in all respects relevant to the challenged government action." Gianfrancesco, 712 F.3d at 640 (citations omitted). In light of Zell's claim, she also needed to allege "that the different treatment was based on a malicious or bad faith intent to injure." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (citing Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)).

With these guiding principles in mind, we conclude that Zell's complaint does not pass muster. Again, Zell is clear in her briefing that she is pursuing the sole equal protection theory that, as a class of one, she was treated differently than "other similarly-situated students that were disciplined (for any reason) and this discipline was appealed to the school committee, but these students were given a fair hearing, unlike Zell." But here's how her equal protection count actually reads in relevant part.

- 25 -

249. Plaintiff K.Z. was singled out by the government and state actors, becoming the specter of arbitrary classification and differential treatment

250. Upon information and belief, similarly situated students at Chariho High School were not singled out by CRSD and the CSC, as Plaintiff K.Z. was, for adverse and differential treatment.

251. Upon information and belief, similarly situated students before RIDE and the Council were not singled out for adverse and differential treatment.

252. Accordingly, Plaintiff K.Z. falls within a protected class.

253. Defendants, by the aforesaid actions and/or omissions, have deprived Plaintiff K.Z. of her equal protection of rights guaranteed under Article 1, Section 2 of the State Constitution and the Fifth and Fourteenth Amendments of the federal Constitution.[15]

Problem is, even assuming favorably that the students referenced above were intended to be her comparators, Zell's complaint falls short of sufficiently pleading that those comparators were "similarly situated [to Zell] in all respects." Gianfrancesco, 712 F.3d at 640. "It is true that an exact correlation need not exist between a plaintiff's situation and that of others in order to make a 'similarly situated' comparison," but as pled, this "claim is far from adequate." Buchanan, 469 F.3d at 178 (internal citation omitted). Her complaint makes mention of other students not being "singled out" as Zell believes

_____

[15] Paragraph 248 incorporates by reference all of the preceding paragraphs. But nothing that comes before paragraph 248 -- or after paragraph 259, where her equal protection count ends -- serves to sharpen Zell's class-of-one theory.

- 26 -

she was, but it says nothing about similarly situated students having been disciplined, nor does it allege that they, unlike Zell, got a fair hearing or a more robust written decision after appealing their discipline.

Moreover, even supposing the comparators had been clearly pled, the complaint fails to allege that there was no rational basis for "the adverse and differential treatment" the complaint mentions and, further, that such treatment was based on a malicious or bad faith intent to injure.  An equal protection claimant "may not prevail [against a Rule 12(b)(6) motion] simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (citations omitted).  In essence, and at most, that's all we have here.

What's more, undermining her class-of-one angle is that aspect of Zell's pleading wherein she asserts she "falls within a protected class."  SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 33 (1st Cir. 2008) (citing Olech, 528 U.S. at 564) (observing that a "class of one" claim is "a claim in which the plaintiffs do not claim membership in a class or group" (emphasis added)).  Because a class-of-one contention necessarily means she was "singled out for reasons unique to [her], not because of [her] membership in a particular group," Najas Realty, LLC v. Seekonk

Water Dist., 821 F.3d 134, 144 (1st Cir. 2016) (citing Snyder v. Gaudet, 756 F.3d 30, 34 (1st Cir. 2014)), to also have the complaint allege that she is a member of a protected class, and where she makes clear on appeal that she is not pleading in the alternative, rather undercuts the class-of-one angle she's now arguing.

In the end, the class-of-one theory Zell says she stated in her complaint is deficiently pled. As such, the equal protection count was properly dismissed.

**Supplemental Jurisdiction and the State-Law Negligence Claims**

The next piece of this puzzle concerns the state-law negligence claims, the supplemental jurisdiction extended to them, and the ultimate dismissal of those claims. Before we tackle the interplay between these issues, we recap the procedural backdrop.

In the district court, various defendants responded to Zell's state-law claims by moving for dismissal for lack of subject matter jurisdiction as well as failure to state a claim. As part of her opposition to those dispositive motions, Zell filed a motion requesting that the district court "Take Supplemental Jurisdiction of Count V [(the administrative appeal)] and All State Law Claims." Some defendants objected to that motion, calling it premature and unnecessary since the district court would automatically deal with the jurisdictional component of the state-law claims depending on how the motions to dismiss fared. In fielding all of these motions

and various objections to them, the district court exercised supplemental jurisdiction over some, but not all, of Zell's state-law claims.[16]  Specifically, the district court declined to exercise supplemental jurisdiction over her administrative appeal and all state-law claims as they pertain to McGinley (the cellphone-wielding actor in the "Spirit Day" altercation, you'll recall, who's named in Counts VI, VII, VIII, and X), dismissing them without prejudice as better brought and decided in state court.  Zell, 321 F. Supp. 3d at 299-300, 304.  But, as to the state-law claims relating to the other defendants (Counts VIII and IX, the negligence and negligent training and supervision claims, respectively), the district court took a different route.  It found that those claims were entangled with the federal constitutional claims, and "concerns for 'comity, judicial economy, and fairness'" merited the exercise of supplemental jurisdiction.  Id. at 300 (citing 28 U.S.C. § 1367).  After exercising supplemental jurisdiction, the district court proceeded to dismiss those claims for failure to state a claim.  Id. at 302.

---

[16] It is implicit in the district court's reasoning that there was no independent basis for subject matter jurisdiction -- that's why supplemental jurisdiction would be necessary to keep the claims in federal court.  On appeal, none of the many parties jump into the Rule 12(b)(1) arena, likely because of the way the district court's analysis and supplemental jurisdiction rulings shook out.

On appeal, of all those dismissed state-law claims, Zell focuses her challenge on the dismissal of her negligence claims (Counts VIII and IX) only.

This context laid out, bear with us as we explain how we will navigate the issues presented.

As we've already mentioned, Zell's two state-law negligence claims are in federal court solely as a result of the district court's exercise of supplemental jurisdiction. See 28 U.S.C. § 1367. Given our earlier decision to affirm the dismissals of the federal-law claims, however, there are no federal claims remaining in this case. This is important because the Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also 28 U.S.C. § 1367(c)(3).

What's more, "we have held that, when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (quoting Desjardins v. Willard,

777 F.3d 43, 45-46 (1st Cir. 2015)); see Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014). Furthermore, under this standard, we've gone on to say that it can constitute an abuse of discretion -- if no federal claim remains to which the state-law claims can be tethered -- "for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts." Wilber, 872 F.3d at 23 (citing Desjardins, 777 F.3d at 45-46).

All of that said, however, Zell does not argue on appeal that, once the federal claims were dismissed for failure to state a claim (as we have determined that the district court rightly held), that the district court's decision to retain jurisdiction is at odds with principles of comity, judicial economy, fairness, and the like, and thus that the dismissals of her pendent state-law claims should be vacated per Desjardins.[17]  In fact, with

---

[17] Zell takes a different approach in attempting to challenge the way in which the district court exercised supplemental jurisdiction over her state-law claims. Specifically, she argues that the district court abused its discretion by exercising supplemental jurisdiction over some state-law claims but not all since, as she sees it, all the state-law claims are bound up in a common nucleus of operative facts. As such, to her thinking, the district court's decision was an all-or-nothing proposition, and her state-law claims therefore should have all been kept in federal court, or all of them should have been dismissed without prejudice so she could file in state court.

But Zell does not direct us to any authority demonstrating the viability of her package-deal theory (that because the district court exercised jurisdiction over some state-law claims, it should

- 31 -

respect to the state-law claims, Zell focuses her appellate attack on the merits-dispositions, asking that we overturn the dismissals of her pendent state-law claims on the ground that the district court erred in concluding that she had not plausibly stated those claims.

That is the challenge we now confront -- whether Zell plausibly stated these state-law negligence claims -- and given that she does not develop a viable argument that the district court abused its discretion by exercising supplemental jurisdiction over those claims, we can "affirm at least those portions of the ruling granting [dismissal] that are so plainly correct that no substantial question of state law is presented." Wilber, 872 F.3d at 23. At the same time, when such unanchored state-law claims are not obvious duds, but instead present substantial issues of state law that are best resolved in state court, we have -- on our

---

have exercised jurisdiction over all of them -- or vice versa). Just because that is what Zell desired when she asked the district court to exercise supplemental jurisdiction does not make it so as a matter of law, and her failure to develop this point with the support of authority is enough to doom it. See, e.g., Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 932 F.3d 1, 12 (1st Cir. 2019); see also Holloway v. United States, 845 F.3d 487, 491 n.4 (1st Cir. 2017) (refusing to consider an argument due to its lack of development when the party did not make any legal citations supporting its argument); Rodríguez v. Municipality of San Juan, 659 F.3d 168, 176 (1st Cir. 2011) (refusing to consider arguments when appellant failed to provide necessary case law and any reasoned analysis to prove his point); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (stating that litigants must develop their own arguments rather than "leaving the court to do counsel's work").

- 32 -

own initiative -- declined to decide their merits and instead remanded them to state court, see id. at 24-25, or directed their dismissal without prejudice, see also Robinson v. Town of Marshfield, 950 F.3d 21, 31 (1st Cir. 2020) (noting that, because state-law claims were in federal court strictly because of an exercise of supplemental jurisdiction, the court still had to grapple with the question of whether to "address their merits or direct their dismissal without prejudice in the interests of comity").

This blueprint for review makes good sense, especially in a case such as this one. As framed before us now, this intertwined supplemental jurisdiction and merits-dismissal matter is less about an abuse-of-discretion review of the district court's decision to exercise supplemental jurisdiction; it's more about exercising our own discretion not to render decisions that would inappropriately pass on the merits of substantial state-law questions. See, e.g., id. (reiterating that "this course best serves 'the interests of fairness, judicial economy, convenience, and comity'" (quoting Wilber, 872 F.3d at 23)); see also Desjardins, 777 F.3d at 46 (declining to decide "whether the district court abused its discretion in resolving the state claims when it did"). This methodology allows us to abstain from imprudent appellate decisions on the merits.

So the fact that Zell did not ask us to consider comity, fairness, or judicial economy does not prevent us from undertaking this approach. As our just-discussed case law makes clear, we can, under certain circumstances, vacate a state-law claims merits-dismissal and direct dismissal without prejudice if we think comity concerns counsel against wading into a substantial state-law issue on appeal. Indeed, that's just what happened in Desjardins, Wilber, and particularly Robinson, which extended this rationale to direct dismissal in a case more closely resembling Zell's, i.e., a non-removed case where the plaintiff actually chose the federal forum. It makes sense for us to implement this approach because comity, which of course is about relations between the state and federal systems, is a unique beast -- unlike other issues we normally would not review (except, perhaps, for plain error) when the parties fail to argue them, the parties generally do not have an incentive to argue for or against enforcement of those independent, system-focused comity interests. Truth be told, it wouldn't make sense to rely on them to do so since it isn't an element that directly or necessarily involves a personal interest.

Now, with all of this in mind, we turn to the two state-law negligence claims Zell has beseeched us to resurrect in the wake of the district court's dismissals.

We begin with Zell's negligent training and supervision count (Count IX), the dismissal of which we have no difficulty affirming. In that claim, Zell alleges that the School "Defendants are vicariously responsible and responsible for the acts and omissions of the Defendants' agents under the theory of respondeat superior." This count does not offer this allegation as something she pleads in the alternative -- it is the sole theory of recovery in this count for the School Defendants' alleged breach of their duty to train and supervise its employees. But the allegation suffers a fatal flaw, which the district court appropriately flagged: Rhode Island law instructs that "liability for the harmful acts of employees is not premised on the doctrine of respondeat superior, but on a separate affirmative duty owed by the employer." Liu v. Striuli, 36 F. Supp. 2d 452, 467 (D.R.I. 1999). And because the Rhode Island Supreme Court has clearly explained that "the liability of an employer in the negligent supervision or hiring of an unfit employee is an entirely separate and distinct basis from the liability of an employer under the doctrine of respondeat superior," Mainella v. Staff Builders Indus. Servs., Inc., 608 A.2d 1141, 1145 (R.I. 1992), the district court was correct in its conclusion that Zell's Count IX fails to state a claim as a matter of law.[18]

_____

[18] And while Zell attempts to write off her "respondeat superior" language as a "typographical error," we remind her that

That leaves us with Zell's general negligence claim, which is a bit more complicated. Count VIII, a general state-law negligence count, zeroes in on the School Defendants' perceived breach of their duty to adequately supervise Chariho's hallways on a known day of mayhem and to properly evaluate Zell after she suffered a head injury. The district court dismissed it for failing to plausibly plead causation, finding that the attempt at pleading that element was too conclusory.

We do not affirm the dismissal of this claim, and that is because whether Zell has plausibly stated her claim turns on questions of Rhode Island state law regarding duty, breach, causation, and damages in Rhode Island schools, and these are issues, we conclude, that are "best resolved in state court." Desjardins, 777 F.3d at 46 (quoting Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (cautioning that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law")); see also Robinson, 950 F.3d at 32 (again, taking a similar approach as we are taking); Wilber, 872 F.3d at 25 (same). Indeed, in our view, whether Zell has done enough to "nudge[]" her claim "across the line from conceivable to

_____

the complaint is the basis of our review, and we must assess the language presented in it -- typos and all. This is particularly true since Zell never filed a motion to amend accompanied by a proposed amended complaint without the "typos."

- 36 -

plausible," Twombly, 550 U.S. at 570, poses a close question and implicates sensitive, down-home local interests, i.e., Rhode Island's schools and the interpretation of Rhode Island law governing schools' liability.

Furthermore, this issue of state-law negligence in the school is not one that shares any analytical nexus with the federal claims we inspected earlier. Indeed, it's one thing when the lingering state-law claims are subject to the same analysis or analysis that flows from the disposition of the federal-law claims such that the outcome of the state-law issue was essentially a foregone conclusion. See, e.g., Robinson, 950 F.3d at 31-32 (resolving state-law claims that were tied to earlier federal-law analysis but directing dismissal without prejudice of state-law claims to which there was "no analogue" in the federal issues already handled).

All told, the viability of this particular state-law negligence claim will turn on the extent, under Rhode Island law, of the School Defendants' duty to supervise school hallways during a day of "known mayhem" and to evaluate student head injuries that take place on school grounds. The legal determinations that would need to be made for us to resolve the merits of this claim implicate

Rhode Island law, school policies, and localized concerns -- on the facts of this case, this is no place for the federal court.[19]

We thus will vacate the dismissal of the state-law general negligence claim and remand to the district court so it can be dismissed without prejudice.[20]

---

[19] We pause here to note that, before the district court and now on appeal, these defendants raise the Coverdell Teacher Protection Act as an affirmative defense. See 20 U.S.C. § 7946(a). Given our disposition of the state-law negligence claim, this affirmative defense remains to be adjudicated in state court. (The defendants do not argue that the federal defense creates federal jurisdiction. See, e.g., Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998) (discussing the "well-pleaded complaint rule")).

[20] One last thing with respect to Zell's various appellate contentions. Zell also says she should have been allowed to amend her complaint to address any perceived deficiencies. In the normal course, we review the denial of a motion to amend for abuse of discretion, deferring to the district court's "hands-on judgment" and for any adequate reason apparent from this record. Najas Realty, LLC, 821 F.3d at 144 (citing Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006)).

But as we noted earlier, Zell did not actually file a motion to amend. Instead, as an alternative to outright dismissal, she perfunctorily requested leave to amend at the close of each opposition submission below. We've said before that requesting amendment as a fallback position, without more, is not sufficient to constitute a motion to amend. See, e.g., Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008).

That said, the district court concluded Zell would not be allowed to amend her complaint, citing futility to support that conclusion. Zell, 321 F. Supp. 3d at 304. As to the federal claims and the state-law negligent supervision/training claim, there was no abuse of discretion in so concluding, see, e.g., Aponte-Torres, 445 F.3d at 58, especially when Zell has not demonstrated that any hypothetical amendment (she hasn't floated a proposed amended complaint delineating the alterations she'd make to rectify the deficiencies) would not have been futile.

As to the state-law general negligence claim (Count VIII), though, our just-explained outcome on the dismissal of that claim renders moot the denial of the motion to amend as to that claim.

## The Cross-Appeal -- Motion for Sanctions

Finally, we confront the cross-appeal regarding the denial of the motion for sanctions. Recall that before the district court, Dean Bridgham, Chairperson Louzon, and Principal Weber moved for sanctions to be imposed on Zell's counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.[21] More particularly, they argued that the civil conspiracy allegations contained in her operative complaint (not pursued on appeal) were utterly frivolous. Further, they posited that Rule 11 sanctions were warranted as to the arguments against Chairperson Louzon, Dean Bridgham, and Principal Weber because Chairperson Louzon was barely involved in the whole saga, and Dean Bridgham and Principal Weber stand accused of "misrepresentations" and "mistruths" without any factual support for those claims even being alleged.

The district court, terming it a "close call," denied the motion for sanctions, and these defendants say that was in error. Zell's counsel, to no one's surprise, agrees with the denial of said motion. We review for abuse of discretion. See, e.g., Silva v. Witschen, 19 F.3d 725, 727 (1st Cir. 1994) ("All aspects of the Rule 11 sanctions decision are reviewed for abuse

_____

[21] Recall that Superintendent Ricci cross-appealed his own sanctions-motion denial, but as we explained above, he has since passed away and his cross-appeal was voluntarily dismissed by his estate.

- 39 -

of discretion."); see also Lichtenstein v. Consol. Servs. Grp., Inc., 173 F.3d 17, 22 (1st Cir. 1999).

Rule 11(b) instructs that an attorney certifies that what he or she presents to the court is formed from an inquiry that is reasonable under the circumstances. Fed. R. Civ. P. 11(b). Rule 11 goes on to say that sanctions "imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). In this circuit, we have explained that the district court "is accorded 'extraordinary deference' when it has decided to deny sanctions" because "trial courts are in the best position to evaluate the intricacies of a case and to reach conclusions about the motives of the parties and their counsel." Lichtenstein, 173 F.3d at 22-23 (quoting Salois v. Dime Sav. Bank of N.Y., 128 F.3d 20, 28 (1st Cir. 1997)). Indeed, to warrant sanctions, "it is not enough that the filer's 'claim lacked merit' -- it must be 'so plainly unmeritorious as to warrant the imposition of sanctions.'" Eldridge v. Gordon Bros. Grp., L.L.C., 863 F.3d 66, 88 (1st Cir. 2017) (quoting Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P., 171 F.3d 52, 58 (1st Cir. 1999)).

We conclude the district court did not abuse its discretion when it denied the motion for sanctions. These defendants decry the lack of factual basis for the complaint's

allegations, alongside a gripe about the district court's "erroneous" assessment of the evidence proffered to support the need for sanctions, but none of their arguments persuade us that the district court abused its discretion in determining that Zell's filings didn't rise to the "so plainly unmeritorious" level described in our precedent. We are unaware of -- and defendants did not point us to -- any case law to support the notion that, extraordinary deference owed notwithstanding, we should reverse the district court's supportable decision not to impose sanctions. On this record, we decline to do so.

## CONCLUSION

We **affirm** the district court's dismissal of Zell's federal claims (Counts I and II), the dismissal of the state-law negligent training/supervision claim (Count IX), the denial of the motion to amend as to those claims, and the denial of the motion for sanctions. We **vacate** the district court's dismissal of Count VIII and direct the dismissal of that claim without prejudice.

Each party shall bear its own costs.